IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD A. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  05 - 1203 |
| | ) | |
| v. | ) | District Judge Arthur J. Schwab |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| SHARON SEBEK, Assistant Librarian; ED RENDELL, Governor of Pennsylvania; DANIEL P. BURNS; BEN E. ANSELL; LT. W. LEGGETT; I. TURCO, Correction Officers; CAPTAIN GRAINEY, Restricted Housing Unit Captain; PRISON HEALTH SERVICES, INC.; AMERICA SERVICE GROUP, INC.; CATHERINE MCVEY, Bureau of health Services, Inc.; MORRIS HARPER, M.D.; STANLEY FALOR, M.D.; FRED R. MAUE, M.D.; MICHAEL CATALANO, Chairman of Prison Health Services, Inc., Chairman, President and CEO of America Services Group; JEFFREY BEARD, Secretary of the Department of Corrections; STATE CORRECTIONAL INSTITUTE AT GREENE-PROGRAM REVIEW COMMITTEE MEMBERS; THOMAS JACKSON, Deputy Superintendent; JOHN DOE I & II; individually and in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss and Motion to Strike Plaintiff's Amended Complaint filed by Defendants Falor, Harper, Prison Health Services, Inc.,

America Service Group, Inc., and Catalano (doc. no. 35) be denied.

## II. REPORT

Plaintiff, Ronald Williams, a Pennsylvania prisoner confined at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania commenced this action against the following Defendants: Sharon Sebek, Assistant Librarian; Ed Rendell, Governor of Pennsylvania; Daniel P. Burns; Ben E. Ansell; Lt. W. Leggett; I. Turco, Correction Officers; Captain Grainey, Restricted Housing Unit Captain; Prison Health Services, Inc.; America Service Group, Inc.; Catherine McVey, Bureau of health Services, Inc.; Morris Harper, M.D.; Stanley Falor, M.D.; Fred. Maue, M.D.; Michael Catalano, Chairman of Prison Health Services, Inc., Chairman, President and CEO of America Services Group; Jeffrey Beard, Secretary of the Department of Corrections; State Correctional Institution at Greene-Program Review Committee Members; Thomas Jackson, Deputy Superintendent; and John Doe I & II. Plaintiff is pursuing liability against Defendants pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1988 and 1997(d) and (e), as well as 28 U.S.C. §§ 2201 and 2202.

### A. Standard of Review

Defendants Stanley Falor, M.D., Morris Harper, M.D., Prison Health Services, Inc. (PHS), America Service Group, Inc.(ASG), and Michael Catalano have filed a Motion to Dismiss (doc. no. 35). Pursuant to Fed. R. Civ. Proc. 12(b)(6), a motion to dismiss may be granted by the court if it is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be

taken as true. Estelle v. Gamble, 429 U.S. 97 (1976).[1]

## B. Plaintiff's Allegations

In his Amended Complaint (doc. no. 33), Plaintiff makes the following allegations. In general, Plaintiff alleges that Defendants denied or delayed treatment of his Hepatitis C and inguinal hernia. Specifically, Plaintiff alleges that on November 20, 2002, he was cleared by the psychiatrist for the hepatitis C protocol treatment. Amended Complaint, ¶ 44. As of December 22, 2002, no treatment was given to Plaintiff so he filed a grievance. Amended Complaint, ¶ 47. On December 31, 2002, nurse John McAnany responded to Plaintiff's grievance stating that Dr. Harper did not indicate that Plaintiff needed immediate treatment and that Plaintiff would see the doctor in April 2003. Amended Complaint, ¶ 48. In response to the delay, Plaintiff filed an additional grievance and his family began contacting State officials and specific members of the Pennsylvania Department of Corrections (DOC) to determine why Dr. Harper now refused to treat his life threatening illness. Amended Complaint, ¶ 49.

On February 20, 2003, Dr. Harper saw Plaintiff and was openly hostile that Plaintiff and his family had contacted numerous State officials, members of the DOC, including Catherine McVey, Director of DOC Healthcare Services, and that Plaintiff had filed a grievance against him. Dr. Harper's tone and attitude were hostile and threatening and he made it clear to Plaintiff that he would not forget what Plaintiff and his family had done as it made him look unprofessional and

---

1. In addition, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in considering a motion to dismiss under Rule 12(b)(6). Pryor v. National Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002) (noting that documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim and may be considered by the court in deciding a motion to dismiss); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

incompetent. From this point forward, Dr. Harper, in concert with others, did refuse, delay, terminate and actively sabotage Plaintiff's medical treatment in retaliation for Plaintiff's actions in filing grievances and complaints. Amended Complaint, ¶¶ 50-53.

It appears that treatment for Plaintiff's Hepatitis C commenced, but on April 12, 2003, Dr. Falor ordered Plaintiff to be seen by Dr. Harper due to a dangerous decline in his platelet count and discontinued his treatment. Dr. Harper refused to see Plaintiff on April 16 and April 18, 2003. On April 19, 2003, Dr. Falor re-ordered Plaintiff's medication but at a reduced dosage. Amended Complaint, ¶ 57. When Plaintiff's platelet count returned to normal, Dr. Harper refused to increase his treatment dosage back to full dosage levels, thus decreasing his chance of effective treatment. Amended Complaint, ¶ 58. Dr. Harper failed to take a blood test in accordance with the Hepatitis C protocol to determine whether the treatment was effective after the first six months of treatment. If the treatment was effective, the protocol required an additional six months of uninterrupted treatment. Amended Complaint, ¶ 61. Dr. Harper discontinued his medication. Amended Complaint, ¶ 60. Plaintiff was forced to file another grievance to get his required blood work. Amended Complaint, ¶ 62.

On September 16, 2003, Plaintiff saw Dr. Harper and questioned him about his failure to follow the Hepatitis C protocols that he earlier had explained to him. Amended Complaint, ¶¶ 64-67. Afterward, Dr. Harper angrily agreed to give Plaintiff the final six months treatment. Amended Complaint, ¶ 68.

On January 28, 2004, Plaintiff was notified that his Hepatitis C treatment would be ending by order of the doctor. Amended Complaint, ¶ 71. On February 8, 2004, Plaintiff wrote Dr. Harper a memo begging him not to discontinue his treatment. Amended Complaint, ¶ 72. Due to his discontinued treatment, Plaintiff's Hepatitis C viral infection reemerged. Amended Complaint,

¶ 74.

In September of 2003, Physician Assistant (PA) Ken Diddle diagnosed Plaintiff as suffering from an inguinal hernia approximately two centimeters long. Diddle explained that it would not heal itself but needed to be repaired by surgery. Amended Complaint, ¶¶ 77-78. On October 7, 2003, Plaintiff saw PA Lori Loping for pain related to the hernia and was told that the only treatment was surgery. On October 16, 2003, Plaintiff again saw PA Loping and requested that she note in his records that he was requesting surgery. On October 21, 2003, PA Loping evaluated Plaintiff and stated that he needed surgery but believed that Dr. Harper and PHS would deny it. Amended Complaint, ¶¶ 79-81. Plaintiff saw Dr. Falor who acknowledged that he needed surgery but stated that inmates were routinely denied efficacious procedures due to cost. Amended Complaint, ¶ 84. Plaintiff suffered continual pain, bowel irregularities, etc. On December 1, 2003, his hernia had increased from two centimeters to 5 centimeters. Amended Complaint, ¶ 87. On December 19, 2003, Plaintiff went to sick call and was supplied with a hernia belt. On December 29, 2003, Plaintiff saw PA Kennan and told him the belt was not helping. On January 5, 2004, PA Kennan came to see Plaintiff on sick call and noted that his hernia was swollen and hard and requested that Dr. Harper evaluate it. Dr. Harper refused and on January 14, 2004, Plaintiff filed a grievance. On January 27, 2004, PA Kennan requested surgical repair and a consultation with Dr. Harper who again refused to examine or consult with Plaintiff after his staff recommended surgical treatment. Amended Complaint, ¶¶ 88-94.

Plaintiff continued to suffer pain and was seen by Dr. Falor on April 5, 2004 where it was determined that his hernia now was 6 centimeters in length. Dr. Falor told him he would request PHS and Dr. Maue to allow Plaintiff to see the surgeon. Ultimately, PHS denied the request. Amended Complaint, ¶¶ 103-109. Throughout May of 2004, Plaintiff sought surgery as his

abdominal wall was tearing and quickly deteriorating. Amended Complaint, ¶¶ 111-115. On June 7, 2004, Plaintiff's hernia had grown to 12 centimeters. Amended Complaint, ¶ 117. Plaintiff ultimately was granted surgery after suffering for ten months. Amended Complaint, ¶ 120. The delay in treatment has caused Plaintiff to suffer pain and requires that he take pain medication every day. Amended Complaint, ¶ 126.

Plaintiff further alleges that PHS is a for-profit health care provider that has a contractual relationship with the Pennsylvania Department of Corrections to provide health care services to Pennsylvania inmates. Amended Complaint, ¶ 14. ASG is the parent and holding company of PHS." Amended Complaint, ¶ 15. Defendant Catalano is the Chairman of Prison Health Services and is responsible for the policies and protocols for inmate care. Amended Complaint, ¶ 20. Plaintiff contends that he was denied medical care for his Hepatitis C and hernia due to a policy or custom of PHS, ASG and Catalano to avoid expenditures on inmate care so as to garner more profits for PHS and ASG. Amended Complaint, ¶¶ 124, 128-233, 437-460. In support of his allegations, Plaintiff cites to numerous allegations involving past practices of PHS or ASG.

### C. Liability under 42 U.S.C. § 1983

In order to assert liability pursuant to 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff takes issue with the medical treatment he received for his Hepatitis C condition and his hernia. These claims invoke the protections of the Eighth Amendment. In order

to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Here, Plaintiff alleges that he has Hepatitis C and that he had a hernia that required

surgery. Thus, Plaintiff has demonstrated the existence of a serious medical need. In addition, Plaintiff has pleaded that Defendants acted with deliberate indifference because they denied medical treatment based on non-medical reasons, *i.e.*, cost and retaliation.

Taken as true, as this Court must when reviewing a motion to dismiss, Plaintiff's allegations are sufficient to show that Defendants may have acted with deliberate indifference. Specifically, Plaintiff alleges that Defendants were on notice that Plaintiff faced a substantial risk of serious harm due to his hernia and disregarded that risk by failing to take reasonable measures to abate it. The same is true of his Hepatitis C condition. *See* White v. Napoleon, 897 F2d 103, 109 (3d Cir. 1990) (complaint alleging that prison doctor intended to inflict pain on prisoners without any medical justification, and alleging a large number of specific instances in which doctor allegedly insisted on continuing courses of treatment that doctor knew were painful, ineffective, or entailed substantial risk of serious harm to prisoners, sufficed to state a violation of the Eighth Amendment and a concomitant right to relief under civil rights statute). The fact that Plaintiff eventually did receive surgery for his hernia does not negate his Eighth Amendment claim that the moving Defendants knew or should have known that his medical condition required surgery in September of 2003 and that the delay for over ten months for alleged non-medical reasons resulted in Plaintiff suffering pain and possible permanent injury.

Additionally, contrary to Defendants' assertions, nowhere in his Amended Complaint does Plaintiff state that he received the full regimen of treatment for his Hepatitis C condition. Defendants' Brief, p. 9 (doc. No. 36).[2] In fact, he states the exact opposite. His claim is that he DID NOT receive the full regimen as required in the protocol, he did not receive the full six months

---

2. The Court is concerned with Defendants' characterization of Plaintiff's allegations in this case and cautions Defendants' attorney to take better care in accurately setting forth prisoner allegations in the pleadings he files in this Court.

additional treatment, and, as a result, he now has full blown Hepatitis C.

Thus, Plaintiff has alleged a violation of his rights as protected by the Eighth Amendment and Defendants' Motion to Dismiss should not be granted as to these claims.

### D. Conspiracy

Next, Defendants seek dismissal of Plaintiff's conspiracy claims. In this regard, the Court of Appeals for the Third Circuit has instructed as follows.

> Under the notice-pleading standard, a complaint must include more than "conclusory allegations of concerted action." Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998). It must also contain at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn. *See* Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). This requirement is established where the complaint sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible. Evancho, 423 F.3d at 353.

Lynn v. Christner, 184 Fed. Appx. 180, 184 -185 (3d Cir. 2006).

In his Amended Complaint, Plaintiff sufficiently presents the time, place, and with whom the alleged conspiracy took place. Amend. Compl. ¶¶ 192 - 217. Construing his *pro se* pleadings liberally, as is required, we conclude that a reasonable juror could infer some sort of mutual understanding or plan to deny Plaintiff proper medical care. Dismissal is not appropriate at this time with respect to the conspiracy claims because Plaintiff has not had the opportunity to conduct any discovery on the existence of an agreement. If Plaintiff is unable to provide additional facts supporting his allegations in response to a motion for summary judgment after discovery has closed, this claim may be disposed. *Accord* Lynn, 184 Fed.Appx. at 185.

### E. Respondeat Superior

Plaintiff is seeking to impose liability against PHS and ASG. To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement

in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207.

As stated above, in order to assert liability pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the alleged misconduct was committed by a "person" acting under color of state law. Local governing bodies are deemed to be "persons" within the meaning of section 1983 and can be sued directly under the act for monetary, declaratory, or injunctive relief. Monell v. Department of Social Services, 436 U.S. 658 (1978). To establish municipal liability plaintiff must: 1) demonstrate the existence of an unlawful policy or custom, and 2) prove that the municipal practice was the proximate cause of his injury. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). A municipality is liable "where the municipality itself causes the constitutional violation at issue." Canton v. Harris, 489 U.S. 378, 385 (1989). To establish causation plaintiff must allege a "plausible nexus" or "affirmative link" between the violation and the municipality's custom or practice. Id. 915 F.2d at 850. A municipality is not liable for the alleged misconduct of its employees absent a link or nexus between the custom or policy and the employee's misconduct because such liability would be predicated upon the doctrine of respondeat superior. Monell, 436 U.S. at 691.

Just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights. *See, e.g.*, Harvey v. Harvey, 949

F.2d 1127, 1129 (11th Cir. 1992) (noting that every circuit court to consider the issue has extended the holding in Monell to private corporations as well) (citing cases). *Accord* Street v. Corrections Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996); Baker v. Simmons, 65 Fed. Appx. 231, 2003 WL 21008830 (10th Cir. May 6, 2003). Consequently, in order to assert a claim against PHS or ASG, Plaintiff must show that a constitutional deprivation resulted from an official custom or policy or, alternatively, from the actions of an official with "final authority to establish municipal policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).

Here, Plaintiff alleges that PHS and ASG had a policy or custom of providing inadequate care in an effort to maximize their profits. Specifically, he alleges that these health care providers maintained a policy or custom of denying or postponing recommended treatment in an effort to maximize their profits. In addition, he alleges that these providers had a custom or policy of denying recommended surgical procedures. Plaintiff's allegations demonstrate that he was denied the recommended hernia surgery for almost a year.

In deciding a motion to dismiss, the Court is required to accept the Plaintiff's allegations as true. Plaintiff's allegations may indicate that PHS and/or ASG maintained a custom or policy of refusing to provide recommended medical treatment based on non-medical reasons, *i.e.*, cost. Deliberate indifference can be shown where prison authorities prevent an inmate from receiving a recommended treatment. *See* Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Here, Plaintiff has not had any opportunity to conduct adequate discovery to support his allegations. Giving Plaintiff the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say that he can prove no set of set of facts consistent with his claims against Defendants PHS and ASG under the standards set forth in Estelle v. Gamble. *See, e.g.*, Ancata v. Prison Health Services, Inc., 769 F.2d 700 (11th Cir. 1985) (reversing District Court

and holding that dismissal of complaint prior to discovery was premature where plaintiff alleged that defendants put the financial interest of Prison Health Services ahead of his serious medical needs); Wilson v. Vannatta, 291 F.Supp.2d 811 (N.D. Ind. 2003) (denying motion to dismiss complaint alleging that his medical treatment was cancelled on the basis of cost); Taylor v. Barnett, 105 F.Supp.2d 483 (E.D. Va. 2000) (denying motion to dismiss inmate's claim that his medical care was motivated solely by cost considerations and not by an informed medical decision). *Cf.* Verser v. Elyea, 113 F.Supp.2d 1211 (N.D. Ill. 2000) (holding that conduct in declining to follow recommendations of medical specialist based on cost rose to level of deliberate indifference). Consequently, the motions to dismiss filed by PHS and ASG should be denied.

Plaintiff also seeks to impose liability against Michael Catalano, CEO of PHS and ASG. While a supervising public official has no affirmative constitutional duty to supervise and discipline so as to <u>prevent</u> violations of constitutional rights by his or her subordinates, when a supervising official <u>knowingly permits</u> a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). In order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinates' violations. *See* Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Here Plaintiff has set forth numerous allegations to establish liability against Catalano on the basis of his failure to properly train and supervise its staff and its alleged acquiescence in PHS' inadequate medical treatment of prisoners in the past. Specifically, Plaintiff's alleges that the

need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001) (citing City of Canton, 489 U.S. at 390, 109 S.Ct. 1197).

This is like the situation presented in Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996), *cert. denied*, 117 S. Ct. 1086 (1997). In that case, the plaintiff claimed that the city maintained a custom or policy of tolerating the use of excessive force by its officers. As proof of the city's acquiescence in such policy, the plaintiff in Beck presented evidence of a series of actual, written civilian complaints of similar nature containing specific information pertaining to the use of excessive force and verbal abuse by the same officer. In addition, the plaintiff presented annual department reports detailing the high rate of excessive force incidents. After reviewing this evidence, the Court of Appeals for the Third Circuit concluded that because the complaints were of a similar nature a reasonable jury could infer that the Chief of Police of Pittsburgh and his department knew, or should have known, of the officer's violent behavior in arresting citizens. In addition, the Court noted that, although department reports highlighted concerns of excessive force, the City took no action in response to such concerns. Based on this record, the court determined that Beck had presented sufficient evidence from which a reasonable jury could infer that responsible policymakers for the City of Pittsburgh knew about, and acquiesced in, the tacit use of excessive force by its police officers. *Id*. at 976.

In the case at bar, Plaintiff has alleged similar allegations of inadequate medical treatment provided by PHS, including allegations of forty six deaths. Amended Compl. ¶ 152. Thus, he alleges that similar conduct has occurred in the past such that Catalano should have been aware that an unreasonable risk of harm existed. Accordingly, Plaintiff's claim against Catalano

should not be dismissed at this time.

### F. Exhaustion of Administrative Remedies and Statute of Limitations

Defendants also seek dismissal of Plaintiff's claim on the basis of his failure to demonstrate that he exhausted his available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows.

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002), the Court of Appeals for the Third Circuit held that the issue of whether a prisoner had exhausted his administrative remedies is an affirmative defense that must be pleaded by the defendant. Consequently, the court concluded that such a defense normally was not appropriate in a motion to dismiss.[3] Similarly, the Court of Appeals for the Third Circuit recently held that the district court should not have considered grievance exhibits attached to a complaint in deciding a motion to dismiss. See Hemingway v. Falor, 2006 WL 2786866, *4 (3rd Cir. Sept. 28, 2006) ("To decide a motion to dismiss, a court

---

3. In a footnote, the court of appeals explained that its decision did not mean that defendants could not raise the prisoner's failure to exhaust as the basis for a motion to dismiss in cases where the defense would present an "insuperable barrier to recovery by the plaintiff." Id. at n.8 (citing Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 127 (3d Cir. 1997)).

generally should consider 'only the allegations in the complaint, exhibits attached to the complaint, matters of public record and documents that form the basis of the claim.' If a court considers other matters, a motion to dismiss should be converted to a motion for summary judgment. Reliance on declarations from prison officials or administrators requires conversion.") (internal quotation and citations omitted).

In like manner, the United States Supreme Court recently held that an inmate's failure to exhaust under the PLRA is an affirmative defense and the inmate is not required to specially plead or demonstrate exhaustion in his complaint. Jones v. Bock, ___ S.Ct. ___, 127 S.Ct. 910, 921 (U.S. 2007). Consequently, the moving defendants are not entitled to dismissal of this action based on their assertion that Plaintiff failed to demonstrate that he administratively exhausted his claims.

The same reasoning applies to Defendants' statute of limitations defense. The specific language of Federal Rule of Civil procedure 8(c) provides that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss unless the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n. 1 (3d Cir.1994). In the case at bar, this court has no evidence upon which to determine when Plaintiff's hernia operation actually occurred. Thus, it can not determine whether Plaintiff's claims concerning his hernia are outside the applicable two year limitations period as to the newly added defendants. Similarly, it can not be determined from the pleadings when Plaintiff became aware, or should have become aware, of the alleged involvement of Defendants PHS, ASG and Catalano regarding his healthcare. Thus, the newly added defendants are not entitled to dismissal as a matter

of law on the basis of the statute of limitations.[4]

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Defendants' Motion to Dismiss and Motion to Strike Amended Complaint (doc. no. 35) be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Dated: February 21, 2007

Lisa Pupo Lenihan
United States Magistrate Judge

cc:  Ronald A. Williams
     AP-8467
     SCI Greene
     175 Progress Drive
     Waynesburg, PA  15370

     Counsel of Record

---

4. Defendants also seek dismissal of Plaintiff's claim for punitive damages. Such dismissal is premature at this time. Finally, Defendants' Motion to Strike Plaintiff's allegations regarding Dr. Harper's licensing should not be granted as those allegations are relevant to Plaintiff's claims against PHS, ASG and Catalano asserting failure to train, supervise and investigate.