IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD A. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  05 - 1203 |
| | ) | |
| v. | ) | District Judge Arthur J. Schwab |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| SHARON SEBEK, Assistant Librarian; | ) | |
| ED RENDELL, Governor of | ) | |
| Pennsylvania; DANIEL P. BURNS; BEN | ) | |
| E. ANSELL; LT. W. LEGGETT; I. | ) | |
| TURCO, Correction Officers; CAPTAIN | ) | |
| GRAINEY, Restricted Housing Unit | ) | |
| Captain; PRISON HEALTH SERVICES, | ) | |
| INC.; AMERICA SERVICE GROUP, | ) | |
| INC.; CATHERINE MCVEY, Bureau of | ) | |
| health Services, Inc.; MORRIS HARPER, | ) | |
| M.D.; STANLEY FALOR, M.D.; FRED | ) | |
| R. MAUE, M.D.; MICHAEL | ) | |
| CATALANO, Chairman of Prison Health | ) | |
| Services, Inc., Chairman, President and | ) | |
| CEO of America Services Group; | ) | |
| JEFFREY BEARD, Secretary of the | ) | |
| Department of Corrections; STATE | ) | |
| CORRECTIONAL INSTITUTE AT | ) | |
| GREENE-PROGRAM REVIEW | ) | |
| COMMITTEE MEMBERS; THOMAS | ) | |
| JACKSON, Deputy Superintendent; | ) | |
| JOHN DOE I & II; individually and in | ) | |
| their official capacities, | ) | |
| | ) | |
| Defendants. | | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment filed by the

Commonwealth Defendants (doc. no. 82) be granted and that the Motion for Summary Judgment

filed by the Medical Defendants (doc. no. 87) be granted.

## II. REPORT

Plaintiff, Ronald Williams, a Pennsylvania prisoner confined at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania commenced this action against the following Defendants: Sharon Sebek, Assistant Librarian; Ed Rendell, Governor of Pennsylvania; Daniel P. Burns; Ben E. Ansell; Lt. W. Leggett; I. Turco, Correction Officers; Captain Grainey, Restricted Housing Unit Captain; Prison Health Services, Inc.; America Service Group, Inc.; Catherine McVey, Bureau of health Services, Inc.; Morris Harper, M.D.; Stanley Falor, M.D.; Fred Maue, M.D.; Michael Catalano, Chairman of Prison Health Services, Inc., Chairman, President and CEO of America Services Group; Jeffrey Beard, Secretary of the Department of Corrections; State Correctional Institution at Greene-Program Review Committee Members; Thomas Jackson, Deputy Superintendent; and John Doe I & II. Plaintiff is pursuing liability against Defendants pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1988 and 1997(d) and (e), as well as 28 U.S.C. §§ 2201 and 2202.

## A. Standard of Review

The Defendants have filed two motions for summary judgement: the Commonwealth Defendants consisting of Sharon Sebek, Ed Rendell, Daniel P. Burns, Ben E. Ansell, Lt. W. Leggett, I. Turco, Captain Grainey, Catherine McVey, Fred Maue, M.D., Jeffrey Beard, Program Review Committee Members and Thomas Jackson (doc. no. 82); and the Medical Defendants consisting of Stanley Falor, M.D., Morris Harper, M.D., Prison Health Services, Inc. (PHS), America Service Group, Inc.(ASG), and Michael Catalano (doc. no. 87).

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52. If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.

### B. Failure to Exhaust Administrative Remedies

Plaintiff has submitted a Civil Rights Complaint over one hundred pages long detailing a myriad of events that occurred over several years. This Court first must determine which claims, if any, Plaintiff fully exhausted his available administrative remedies as required by the

Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a)      Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures. In addition, in

4

<u>Porter v. Nussle</u>, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The administrative grievance procedure for Pennsylvania inmates is codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." The purpose of the grievance system is to insure that every inmate confined in a Bureau of Correction facility has an avenue through which prompt resolution of any problem which arises during the course of confinement may be sought. DC-ADM 804 ¶ 1. The grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the Secretary's Office. DC-ADM 804 ¶ VI. The administrative policy further provides that, prior to utilizing the grievance system, prisoners are required to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member. DC-ADM 804 ¶ V.

A prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after filing a complaint in federal court. <u>Ahmed v. Dragovich</u> 297 F.3d 201, 209 (3d Cir. 2002). Moreover, a Pennsylvania prisoner may procedurally default his claims by failing to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, thereby precluding an action in federal court. *See* <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004).[1] The United States Supreme Court adopted a similar holding in <u>Woodford</u>

---

1. In so holding, the Court held that failing to specifically name accused individuals in a grievance amounted to procedural default because the regulations so required. The relevant regulations provide as follows: "The inmate shall include a statement of the facts relevant to the

v. Ngo, 548 U.S.81, 126 S.Ct. 2378 (June 22, 2006) wherein it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement. Woodford, 126 S.Ct. at 2382.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 126 S. Ct. at 2385-2386 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 126 S. Ct. at 2387. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. Woodford, 126 S.Ct. at

---

claim. The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally. DC-ADM 804, Part VI.A.1.d.

6

2388.[2]

       In the instant action, the relevant record evidence shows the following with respect to the claims set forth in Plaintiff's Amended Complaint. Plaintiff filed Grievance No. 39392 against Dr. Harper complaining about his failure to begin his Hepatitis C treatment.[3] Plaintiff appealed this Grievance to final review, which was denied on February 19, 2003. The events complained of in this grievance are barred by the two year limitations period for civil rights claims. In this regard, the limitations period for civil actions brought under 42 U.S.C. § 1983 is determined by state law.[4] Under Pennsylvania law, the applicable limitations period for civil rights actions asserted under 42 U.S.C. § 1983 is two years. *See* 42 Pa. Cons. Stat. § 5524. The date when a civil rights action accrues (begins to run) is a matter of federal law. Albright v. Oliver, 510 U.S. 266, 280 n.6 (1994) (J. Ginsarca, concurring). A claim accrues when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the Defendant. *See* Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the limitations period); Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988) (a federal cause of action accrues when the plaintiff is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury

_____

2. Recently, the Supreme Count ruled that a Michigan state inmate's failure to name the defendants during the course of the grievance procedure did not constitute a failure to exhaust because there was no such requirement to do so in the Michigan state grievance policy. See Jones v. Bock, ___ U.S. ___, 127 S.Ct. 910, 923 (2007). Because Pennsylvania regulation does so require, the holding in Jones does not apply to Pennsylvania prisoners. *Accord* McKinney v. Kelchner, 2007 WL 2852373, *4 (M. D. Pa. Sept. 27, 2007).

3. *See* Exhibit B, doc. no. 84-2.

4. *See* Wilson v. Garcia, 471 U.S. 261, 272-76 (1985) (42 U.S.C. § 1983).

constitutes a legal wrong).

Plaintiff's Complaint is signed and dated August 23, 2005. Due to the two-year limitations period, Plaintiff cannot impose liability against Defendants under 42 U.S.C. § 1983 for events that occurred prior to August 23, 2003. The events complained about in Grievance No. 39392 occurred prior to August 23, 2003. Consequently, this Court may not review those claims.[5]

Plaintiff filed Grievance No. 45331 and Grievance Number 45332 complaining that he was denied access to a typewriter while in the RHU. This issue was properly exhausted and is preserved for judicial review.[6]

Grievance number 60875 alleges that Defendant Sebek violated Plaintiff's right of access to the courts by improperly seizing his legal documents. Although the Commonwealth Defendants assert that this claim was fully exhausted, the record shows that Plaintiff failed to file a timely appeal for final review.[7] Notwithstanding, the Court will review the merits of this claim as it appears Defendants may have waived their right to assert procedural default.

In Grievance No. 62493, Plaintiff claims that Defendants Sebek, Burns, and Leggett retaliated against him for filing grievance number 60875 by issuing him a misconduct for falsifying

---

5. As Defendants point out, Plaintiff did file a Grievance No. 60449 complaining about the discontinuance of his Hepatitis C treatment but he failed to file a timely appeal for final review. *See* Exhibit C, doc. no. 84-2. As a result, Plaintiff procedurally defaulted that claim and this Court may not review it. *See* Eakle v. Palakovich, 200 Fed. Appx. 155, 156, 2006 WL 2917531, *1 (3d Cir. 2006).

6. See Exhibits D & E, doc. no. 84-2.

7. See Exhibit F, doc. no. 84-2, p. 36.

documents.[8] In Grievance No. 73173 Plaintiff complains about the treatment of his inguinal hernia.[9]

Plaintiff fully exhausted both of these claims and, therefore, they are ripe for judicial review.

## C. Liability under 42 U.S.C. § 1983

In order to assert liability pursuant to 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

1. Typewriter Access

Plaintiff's first claim raises an Equal Protection Claim based on the fact that inmates in the RHU on AC do not have access to typewriters while Capital Case inmates do. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' " Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)). *See also* United States v. Armstrong, ---U.S.---, 116 S.Ct. 1480 (1996) (Equal Protection Clause prohibits decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

The level of scrutiny applied to ensure that classifications comply with this guarantee

8. See Exhibit G, doc. no. 84-2.

9. See Exhibit H, doc. no. 84-3.

differs depending on the nature of the classification. Classifications involving suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened or "strict" scrutiny. City of Cleburne, 473 U.S. at 439. Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge. F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts); Chapman v. United States, 500 U.S. 453, 465 (1991).

There is no fundamental constitutional right to a typewriter. Nor are prisoners a suspect class. Lee v. Governor of State of N.Y., 87 F.3d 55, 60 (2d Cir. 1996); United States v. King, 62 F.3d 891, 895 (7th Cir. 1995); Latham v. Brown, 11 F.3d 1070, 1993 WL 394802 (D.C. Cir. 1993). Thus, DOC may treat capital and non-capital AC inmates differently as long as its decisions are rationally related to a legitimate government interest. King, 62 F.3d at 895 (quoting City of Cleburne, 473 U.S. at 440).

Here, the record reflects that DOC's policy of granting capital case inmates access to a typewriter while denying the same access to inmates on AC is rationally related to the legitimate state purpose of maintaining order and security within the prison.[10] Specifically, capital inmates are confined in AC solely due to their sentence while AC inmates primarily are confined due to their security risk to others inside the institution. Moreover, AC inmates have used typewriter parts for weapons while capital inmates generally have not. Maintaining prison security is a legitimate government interest. Therefore, Defendants are entitled to summary judgment as to Plaintiff's Equal

_____

10. Exhibit V, doc. 84-9.

Protection claim.

2.    Access to Courts

Plaintiff's second exhausted claim concerns Grievance No. 60875 wherein Plaintiff alleges that Defendant Sebek violated Plaintiff's right of access to the courts by improperly seizing his legal documents.  In Christopher v. Harbury, 536  U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts.  Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint:  1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.  Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently.  Christopher, 536 U.S. at 417.  In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." Id. The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. Id. at 414.

Plaintiff has failed to submit any evidence to identify what court action was affected and what remedy may be awarded as recompense that would not be available in any other future

11

litigation. Consequently, Defendants are entitled to summary judgment as to this claim.

3.    Retaliation

Plaintiff's third exhausted claim is that set forth in Grievance No. 62493 wherein Plaintiff claimed that Defendants Sebek, Burns, and Leggett retaliated against him for filing Grievance No. 60875 by issuing him a misconduct for falsifying documents. This claim invokes the protections of the First Amendment. In this regard, it is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a

prisoner.  *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim.  *See* Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about a guard's misconduct).  Plaintiff claims that the retaliation was the result of his filing grievances.  Thus, he had alleged the first element of a retaliation claim.

With respect to the second element, the Plaintiff alleges that he was subject to a misconduct for which he received 90-days disciplinary time.  This Court may conclude that he has alleged the second element of a retaliation claim, *i.e.*, that he was subjected to "adverse" action.  *See* Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2002) (holding that prisoner's allegation that he was falsely charged with misconduct in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); Allah, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim).

It is the third element that limits Plaintiff's recovery, *i.e.*, that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.  With respect to his allegations that the Defendants issued a false misconduct report, the filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as prohibited "retaliation" unless the

report is, in fact, false. In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance. *See* Harris-Debardelaben v. Johnson, 121 F.3d 708, 1997 WL 434357, at *1 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.), *cert. denied*, 119 S.Ct. 246 (1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."), *cert. denied*, 115 S.Ct. 2584 (1995). *See also* Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); Allah v. Al-Hafeez, 208 F. Supp. 2d 520 (E.D. Pa. 2002).

Here, Plaintiff sent three documents to the library for copying. When the librarian inspected the items, she found that Plaintiff had affixed by tape an old notary stamp with signature and state seal on the documents to be copied thus attempting to make them appear original. The librarian refused to copy the altered documents and confiscated them. Plaintiff was issued a misconduct for Forgery and Possession of Contraband. He was found guilty of Forgery and received 90-days disciplinary custody based on the hearing examiner's review of the documents in question (doc. no 84-2, p. 39). This constitutes "some evidence" sufficient to support a prison disciplinary conviction. *See* Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). Consequently, Defendants are entitled to summary judgment as to Plaintiff's retaliation claim.

4.    Hernia

Plaintiff's fourth exhausted claim concerns the treatment of his inguinal hernia. This

claim invokes the protections of the Eighth Amendment. In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

The parties acknowledge that Plaintiff suffered from a hernia, which eventually was corrected through surgery. Thus, Plaintiff has demonstrated the existence of a serious medical need. Notwithstanding, Plaintiff has failed to demonstrate that any Defendant acted with deliberate indifference to his condition.

The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id.* Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

The Supreme Court explained the difference between negligence and constitutional claims in Estelle v. Gamble, 429 U.S. 97, 104 (1978). In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed

a pain reliever and a muscle relaxant.  Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work.  During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication. Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period . . ..  They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury."  The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers.  Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued.  The Court of Appeals agreed, stating:  "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing."  But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

Gamble, 427 U.S. at 107 (internal citations omitted) (emphasis added).

Like the prisoner in Gamble, Plaintiff at bar has failed to demonstrate that he suffered

a constitutional violation, a prerequisite for recovery under 42 U.S.C. § 1983. Plaintiff's medical

records indicate that he received extensive medical treatment for his hernia.[11]  In September of 2003,

Plaintiff was diagnosed with an inguinal  hernia approximately three centimeters in length.  Medical

personnel monitored Plaintiff's condition from September 2003 to July 2004.  In the meantime, the

hernia was treated with a hernia truss and pain medication.  When Plaintiff's hernia extended into

the scrotum area, a surgical consultation was approved.  Surgery was recommended and on July 28,

2004 the hernia was surgically removed.

While an intentional refusal to provide <u>any</u> medical treatment to an inmate suffering

from a serious medical need manifests deliberate indifference and is actionable under the Eighth

Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment

that he requests or that is available elsewhere.[12]   A disagreement as to the appropriate choice of

medical treatment does not give rise to a constitutional violation because the "right to be free from

cruel and unusual punishment does not include the right to the treatment of one's choice."  <u>Layne</u>

<u>v. Vinzant</u>, 657 F.2d 468, 473 (1st Cir. 1981).  Mere disagreements over medical judgment do not

state Eighth Amendment claims as there are typically several acceptable ways to treat an illness.

<u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). *Accord* <u>Young v. Quinlan</u>,

---

11.  *See* Exhibit N, doc. no. 84-7.

12  *See, e.g.*, <u>Dias v. Vose</u>, 960 F.2d 143 (1st Cir. 1991); <u>United States v. DeCologero</u>, 821 F.2d
39, 42 (1st Cir. 1987) ("though it is plain that an inmate deserves adequate medical care, he
cannot insist that his institutional host provide him with the most sophisticated care money can
buy"); <u>Ferranti v. Moran</u>, 618 F.2d 888, 891 (1st Cir. 1980) (a dispute over the exercise of
professional medical judgment may present a colorable claim of negligence, but it falls short of
alleging a constitutional violation); <u>Layne v. Vinzant</u>, 657 F.2d 468, 474 (1st Cir. 1981) (where
the dispute is over the adequacy of the medical treatment, federal courts should be reluctant to
second guess medical judgments and to constitutionalize claims that sound in state tort law).

960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

To survive Defendants' motions for summary judgment, Plaintiff is required to point to some evidence to show that Defendants knew or were aware of a substantial risk of serious harm to Plaintiff based on their treatment of his hernia. Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Specifically, there is no record evidence that suggests that any Defendant knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate. Moreover, while Plaintiff wanted surgery sooner, he has failed to demonstrate that he suffered any harm as a result of Defendants' actions. Thus, Defendants are entitled to summary judgment as to Plaintiff's claims alleging inadequate medical treatment. *See* Monmouth, 834 F.2d at 346 (deliberate indifference may be shown only where prison officials have actual knowledge of the need for treatment, yet intentionally refuse to provide any appropriate care).

### D. Unexhausted Claims

Plaintiff makes two claims that he was unable to exhaust as they are outside the scope of DOC's Grievance Policy: due process issues concerning his misconduct and his continued confinement in AC. In this regard, the Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more

than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's due process claims is whether Defendants' actions impacted a constitutionally-protected liberty interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from administrative segregation. *See, e.g.*, Hewitt, 459 U.S. at 468; Wolff, 418 U.S. at 556; Montayne v. Haymes, 427 U.S. 236, 242 (1976); Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992). Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in remaining free from administrative detention.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis

added). Applying this test, the Supreme Court concluded that the prisoner in <u>Sandin</u> did not have

a protected liberty interest in remaining free of disciplinary detention or segregation because his

thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the

basic conditions of his sentence. In making this determination, the Supreme Court looked at two

basic factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2)

whether the conditions of his confinement in disciplinary segregation were significantly more

restrictive. After reviewing these two factors, the Court concluded that thirty days in disciplinary

detention, which was similar in many respects to administrative custody, did not present the type

of atypical, significant deprivation in which a state might conceivably create a liberty interest.

      First, it must be noted that a prisoner does not have a constitutional right to be free

from being falsely or wrongly accused of conduct that may result in the deprivation of a protected

liberty interest. <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982

(1988). In other words, the mere filing of false charges against an inmate does not constitute a *per*

*se* constitutional violation. *Id*. Before the Supreme Court handed down its opinion in <u>Sandin</u>, the

federal courts had determined that the filing of unfounded administrative charges against an inmate

may result in a procedural due process violation <u>only</u> when such charges were not subsequently

reviewed in a hearing. *Id*. at 952 (an allegation that a prison guard planted false evidence fails to

state a claim where the procedural due process protections as required in <u>Wolff v. McDonnell</u> are

provided) (citation omitted). Thus, even if false charges impaired a protected liberty interest, as long

as prison officials granted the inmate a hearing and an opportunity to be heard, the filing of

unfounded charges did not give rise to a procedural due process violation actionable under section

1983. *Accord* <u>Smith v. Mensinger</u>, 293 F.3d 641, 654 (3d Cir. 2002); <u>Jones v. Coughlin</u>, 45 F.3d

677 (2d Cir. 1995); <u>Franco v. Kelly</u>, 854 F.2d 584, 587 (2d Cir. 1988); <u>McClean v. Seclor</u>, 876 F. Supp. 695 (E.D. Pa. 1995).

In light of the Supreme Court's ruling in <u>Sandin</u>, however, Plaintiff has not even demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions in allegedly issuing a false report. Specifically, in deciding whether a protected liberty interest exists under <u>Sandin</u>, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. <u>Mitchell v. Horn</u>, 318 F.3d 523, 532 (3d Cir. 2003) (citing <u>Shoats v. Horn</u>, 213 F.3d 140, 144 (3d Cir. 2000)). In this case, Plaintiff alleges that, as a result of the misconduct, he received ninety (90) days of DC. Recently, the Court of Appeals for the Third Circuit held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under <u>Sandin</u>. *See* <u>Young v. Beard</u>, 227 Fed. Appx. 138, 2007 WL 824172 (3d Cir. 2007). Thus, it is unlikely that the filing of false charges, even in the absence of a hearing, would state a constitutional claim on the facts before this Court. *See* <u>Strong v. Ford</u>, 108 F.3d 1386 (Unpublished Opinion), 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of an atypical hardship on the inmate in relation to the ordinary incidents of prison life).

Moreover, even if the Court were to find a protected liberty interest based on Plaintiff's time in AC, a holding it specifically does not make, Plaintiff has failed to show a violation of his due process rights. *See* <u>Shoats v. Horn</u>, 213 F.3d 140 (3d Cir. 2000) (holding that periodic review by PRC of status of prisoner held in administrative confinement for eight years afforded all

due process to which inmate was entitled).  Consequently, Defendants are entitled to summary judgment as to this claim.

## E. Conspiracy

In his Amended Complaint, Plaintiff makes several accusations of conspiracy.  In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'"  Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).  Plaintiff has concluded that Defendants and others conspired to violate his rights yet, with regard to the claims discussed above, he has failed to evidence any facts showing an agreement or plan formulated and executed by the Defendants to achieve this conspiracy.  Plaintiff cannot rely on unsupported claims of conspiracy.  Without a factual showing which gives some substance to the conspiracy claims, Plaintiff's conspiracy claim amounts to nothing more than mere conjecture and bare speculation.  The law is clear that bare allegations of wrongdoing by a Defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim.  Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir. 1988) (citations omitted).  Also, to survive a motion for summary judgment, the Plaintiff must establish that there is a genuine issue of material fact regarding the question of whether the Defendants entered into an illegal conspiracy which caused the Plaintiff to suffer a cognizable injury.  Massachusetts School of Law at Andover v.  American Bar Association, 107 F.3d 1026, 1039 (3d Cir.), *cert. denied*, 522 U.S. 907 (1997).  In other words, to successfully counter the Defendants' motions for summary judgment, Plaintiff must provide specific evidence establishing that the Defendants agreed among themselves to act against him either unlawfully or for an unlawful

purpose. <u>Vieux v. East Bay Regional Park Dist.</u>, 906 F.2d 1330, 1343 (9th Cir.), *cert. denied*, 498 U.S. 967 (1990).

Here, Plaintiff has failed to introduce into this record any evidence which shows an agreement or plan formulated and executed by Defendants or anyone else which rises to the level of a conspiracy. At a minimum, absent some modicum of proof which tends to reveal the existence of an agreement which is designed to deny the constitutional rights of the Plaintiff, he cannot maintain his conspiracy claim. In sum, Plaintiff's allegations, standing alone, are patently insufficient for a reasonable jury to return a verdict in his favor. *See* <u>Schowengerdt v. United States</u>, 944 F.2d 483 (9th Cir. 1991) (allegations in a complaint which are based on inference and speculation cannot defeat a motion for summary judgment on a conspiracy claim), *cert. denied*, 503 U.S. 951 (1992); <u>D.R., a minor v. Middle Bucks Area Vocational School</u>, 972 F.2d 1364 (3d Cir. 1992) (the Plaintiffs failed to show that the Defendants engaged in a conspiracy to interfere with the Plaintiffs' civil rights); <u>City of Omaha Betterment Association v. City of Omaha</u>, 883 F.2d 650 (8th Cir. 1989) (evidence was insufficient to support a finding that an employer and a local union conspired to deny an employee a promotion because of her gender); <u>Gometz v. Culwell</u>, 850 F.2d at 464 (summary judgment should have been granted regarding against allegations of a conspiracy purportedly engaged in between prison officials because no credible evidence supported the conspiracy claim); <u>Oatess v. Norris</u>, 431 Pa. Super. 599, 637 A.2d 627 (1994) (an inmate's response to officers' motion for summary judgment in 1983 civil rights action alleging a conspiracy was not sufficient to establish the existence of a genuine issue of material fact).

Because the evidence which is included in the record is insufficient to raise a genuine issue of material fact, the Defendants' Motions for Summary Judgment should be granted.

**F. State Law Claims**

Finally, Plaintiff included in his Amended Complaint state law claims of violations of the Pennsylvania Constitution. A federal court has "supplemental jurisdiction" over claims that are "part of the same case or controversy" as a claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). Subsection 1367(c) authorizes a federal court to decline jurisdiction over state claims even though the court has federal jurisdiction when:

1.   the claim raises a novel or complex issue of State law;

2.   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

3.   the district court has dismissed all claims over which it has original jurisdiction; or

4.   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

When "the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). This Report recommends granting summary judgment to all Defendants. It follows that the Plaintiff's state law claims should be dismissed as considerations of judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for retaining jurisdiction. *Accord* Lovell Manufacturing v. Export-Import Bank of the U.S., 843 F.2d 725, 734 (3d Cir. 1988).

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion for

Summary Judgment filed by the Commonwealth Defendants (doc. no. 82) be granted and that the Motion for Summary Judgment filed by the Medical Defendants (doc. no. 87) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Dated: February 19, 2008

Lisa Pupo Lenihan
United States Magistrate Judge

cc:    Arthur J. Schwab
       United States District Judge

       Ronald A. Williams
       AP-8467
       SCI Greene
       175 Progress Drive
       Waynesburg, PA  15370

       Counsel of Record